IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| LESLIE LLOYD MOSS, PRO SE,<br>also known as LESLIE L. MOSS,<br>TDCJ-CID No. 896113, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:10-CV-0259 |
| Major BRIAN CLARK,<br>Correctional Officer III ROBERT B. NIXON,<br>Sergeant MATTHEW E. BORUNDA,<br>Correctional Officer III CELEB SIMMS,<br>Correctional Officer IV<br>    CYNTHIA M. BECERRA,<br>Sergeant SHERRY A. WHEELER, and<br>Sergeant STEPHEN A. ORTEGA, | § § § § § § § § | |
| Defendants. | § § | |

## REPORT AND RECOMMENDATION TO
## GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Before the Court is the June 21, 2013 Motion for Summary Judgment filed by defendants

BORUNDA, CLARK, ORTEGA, and WHEELER, with accompanying brief and Appendix.

Plaintiff's sole response to the motion was a pleading entitled "Motion for an Order of

Dismissal" which was in the nature of a motion to strike defendants' motion for summary

judgment. The Motion for an Order of Dismissal was denied July 8, 2013. Plaintiff did not

submit any other response to defendants' motion for summary judgment and plaintiff's Motion

for an Order of Dismissal does not address the merits of the defendants' Motion for Summary

Judgment nor does it identify any evidence in the record rebutting defendant's motion.

Therefore, if the motion to dismiss is what plaintiff intended to be his response, it is wholly

inadequate.

Rather than considering plaintiff's motion to strike defendants' motion for summary judgment as a response, it appears that plaintiff failed to respond.  While the Court cannot grant summary judgment by default because of this failure, *Hibernia National Bank v. Administration Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985), the Court is permitted to accept the defendant's evidence as undisputed and may grant summary judgment to defendant upon a prima facie showing of entitlement.  *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996).

On September 24, 2012, the Court issued an Order of Partial Dismissal dismissing all of plaintiff's claims against all defendants in their official capacities pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure; dismissing plaintiff's claims against defendant CLARK for injunctive relief for failure to state a claim on which relief can be granted; and dismissing plaintiff's claims against defendant BECERRA in her individual capacity without prejudice for failure to state a claim on which relief can be granted.

As a result, the claims which remain are plaintiff's claims against defendants CLARK, NIXON, BORUNDA, SIMMS, WHEELER, and ORTEGA in their individual capacities for alleged excessive use of force.

On May 13, 2013, the Court issued an Order to Show Cause Why Defendants NIXON and SIMMS should not be dismissed because of plaintiff's failure to serve.  That Order was corrected May 21, 2013 to correct a typographical error in the recitation of the date on which the U.S. Marshal had been ordered to serve defendants NIXON and SIMMS.  On May 31, 2013, plaintiff requested the Court to order issuance and service of process on defendants NIXON and SIMMS, but provided no new addresses or information as to those defendants.  That motion was

denied on June 21, 2013, by an order in which the Court noted it had previously issued such an order on October 23, 2012, ordering that defendants be served at their last known addresses but that process had been returned unserved and plaintiff had provided no additional information to enable service[1].

Plaintiff's claims in this lawsuit are that the defendants used excessive force against him on May 11, 2010 when they sprayed him with a chemical agent while he was sleeping on his bunk. Plaintiff claims defendant CLARK ordered the use of force; defendants WHEELER and ORTEGA supervised the use of force; defendants NIXON, SIMMS, and BORUNDA carried out the use of force and defendant BECERRA videotaped it.

Plaintiff requests compensatory damages of $300,000.00 and punitive damages of $200,000.00 from each defendant, along with injunctive relief ordering defendant CLARK to "abolish the 'snatch and grab' method" and to comply with TDCJ rules governing the use of force.

### UNDISPUTED FACTS

Plaintiff is proceeding *pro se* and *in forma pauperis*. During the time relevant to this case, plaintiff was a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), and was housed at the Clements Unit in Amarillo, Texas. Similarly, at all times relevant to this cause, the defendants were employed by the Texas Department of Criminal Justice, Correctional Institutions Division, and were acting under color of state law.

---

[1]By this Report and Recommendation, the Magistrate Judge recommends dismissal of plaintiff's claims against defendants NIXON and SIMMS on the same basis as plaintiff's claims against the other defendants. Alternatively, the Magistrate Judge recommends that plaintiff's claims against NIXON and SIMMS be dismissed without prejudice pursuant to Rule 4, Federal Rules of Civil Procedure.

On or about May 11, 2010, a use of force was conducted on plaintiff which forms the basis of the instant cause of action.

## FACTUAL ALLEGATIONS

Plaintiff alleges that, on May 11, 2010, he was asleep in his cell when the defendants suddenly ran up to his cell with gas masks and gas.  Plaintiff alleges defendant SIMMS opened up plaintiff's food slot while defendant NIXON dispersed a chemical agent into plaintiff's cell. Plaintiff says he put his face in the mattress and then went to the door where Sgt. BORUNDA sprayed plaintiff with more chemical agent and asked plaintiff if he was going to come out of his cell.  Plaintiff says he replied, "yes" and was let out of the cell.  He states his breathing had become worse and he was feeling faint, so he got on his knees.  He says Sergeant BORUNDA then ordered him placed on a stretcher and taken to the infirmary.  Plaintiff says no medical personnel were present cellside during the use of force and when he arrived at the infirmary, he alleges he could not reply to the nurse's questions because he was having so much trouble breathing.  Plaintiff says defendant NIXON later said he knew it was wrong, but defendant CLARK had ordered it.  Plaintiff states defendant NIXON wrote a false disciplinary case against plaintiff to cover up what really happened.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By their motion for summary judgment, defendants argue they are entitled to qualified immunity and present the following evidence:

| | | |
|---|---|---|
| Appendix pgs. 1-58 | Exhibit D-1 | TDCJ Use of Force Report MA-02449-05-10 with supporting Affidavit |
| Appendix pgs. 59-63 | Exhibit D-2 | Affidavit of Matthew Borunda |
| Appendix pgs. 64-67 | Exhibit D-3 | Affidavit of Brain Clark |

| Appendix pgs. 68-71 | Exhibit D-4 | Affidavit of Stephen Ortega |
| Appendix pgs. 72-74 | Exhibit D-5 | Affidavit of Sherry Wheeler |
| Supplement | Exhibit D-6 | Video from TDCJ Use of Force Report MA-02449-05-10 |

Defendants argue the evidence demonstrates they are entitled to qualified immunity from plaintiff's excessive use of force claims against them in their individual capacities.

Other than the pleading referenced on page one of this Report and Recommendation, plaintiff did not submit any response to the merits of defendants' motion for summary judgment.

## EFFECT OF PLAINTIFF'S FAILURE TO RESPOND

While the Court cannot grant summary judgment by default because of plaintiff's failure to respond, *Hibernia National Bank v. Administration Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); the Court is permitted to accept the defendants' evidence as undisputed and may grant summary judgment to the defendants upon a prima facie showing of entitlement. *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996); *Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1117 (N.D.Tex.1990); *Buckley v. Dallas County*, Civil Action No. 3:97-CV-1649-BC, 2000 WL 502845 (N.D.Tex. April 27, 2000).

Where the movant does not bear the burden of proof at trial, it may meet its summary judgment obligation by pointing out the absence of evidence to support the non-movant's claims. *See, Celotex v. Catrett*, 477 U.S. 317 at 325. Once the movant has met its obligation, the burden shifts to the non-movant to adduce evidence showing a genuine issue of material fact for trial. *Id.* at 324. This burden may be satisfied by designating specific facts on the record and articulating

the precise manner in which they support the non-movant's claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Usually, where the nonmovant fails to respond to a motion for summary judgment, he is relegated to his unsworn pleadings, which do not constitute summary judgment evidence. *See, e.g., Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991).

When a party fails to identify evidence in the record to oppose a motion for summary judgment, that evidence is not properly before the court. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992). While the court is not prohibited from considering anything in the record, Rule 56 does not require the Court to comb the entire record in search of evidence to oppose a summary judgment motion, especially where the non-movant has abdicated his responsibility to respond. *See Jones v. Sheehan, Young, & Culp, P.C.,* 82 F.3d 1334, 1338 N.3 (5th Cir. 1996); *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988)(it is not necessary "that the entire record in the case must be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered").

"[I]f a plaintiff fails to respond to a properly supported summary judgment motion, [he] cannot meet [his] burden of designating specific facts showing that there is a genuine issue for trial." *Bookman v. Shubzda*, 945 F.Supp. at 1004. Therefore, the Court may consider the evidence presented by the moving party to be undisputed. See *Eversly v. Mbank*, 843 F.2d at 174; *Christian v. Dallas*, 64 F.Supp.2d 617, 623 (N.D.Tex. 1999).

Plaintiff's status as a *pro se* litigant, while entitling him to a liberal construction of his pleadings, does not excuse him, as the party with the burden of proof, from the requirement that he designate evidence demonstrating an issue of material fact. *Bookman v. Shubzda*, 945 F.Supp.

at 1004-1005 (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d at 1338; *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 455 N.4 (5th Cir. 1995)(cautioning *pro se* litigant that disregard for rules of appellate procedure may result in dismissal), *aff'd on reh'g en banc on other grounds*, 789 F.3d 1415 (1996)), *Christian v. Dallas*, 64 F.Supp.2d at 623; *Buckley v. Dallas County*, Civil Action No. 3:97-CV-1649-BC, 2000 WL 502845 at *4 (N.D.Tex. April 27, 2000).  A *pro se* litigant must follow the same procedural rules governing all litigants.  *Christian v. Dallas*, 64 F.Supp.2d at 623 (citing *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992)(*per curiam*)(*pro se* litigant has no right to notice additional to that provided in Federal Rules of Civil Procedure).

Because plaintiff has failed to identify record evidence demonstrating an issue of material fact, defendants' evidence is accepted as undisputed and summary judgment may issue for defendants upon a prima facie showing of entitlement.  *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996).

### THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(a).  Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of fact that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472, U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in  light of contemporaneous clearly-established law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).  Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question.  *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Although it may be "difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by *Farmer*[2] and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights," in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate indifference.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998)(quoting *Briecke v. Coughlin*, No. 92-CV-1211, 1994 WL 705328 at 6 (N.D.N.Y.Dec. 16, 1994).  Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were

---

[2]Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

objectively unreasonable as a matter of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

### ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

All defendants who have answered have pled their entitlement to qualified immunity.  As noted earlier, all claims against defendant BECERRA have been dismissed.

Neither defendant NIXON nor defendant SIMMS was successfully served and, for that reason, neither is before the Court.  Nevertheless, unserved or defaulting former officials are entitled to "benefit from the appearing defendants' favorable summary judgment motion."  *Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir.2001); *see also Bloch v. Samuels,* No. H-04-4861, 2006 WL 2239016, *9 (S.D.Tex. Aug.6, 2006).

### USE OF FORCE VIDEO

Review of the use of force video submitted with defendants' summary judgment evidence, the accuracy of which is not contested by plaintiff, shows that, after the team of corrections officers was assembled by defendant BORUNDA, they were admitted to the run (hallway). Defendants NIXON and SIMMS rapidly walked to plaintiff's cell, with defendant BORUNDA following somewhat behind.  Defendant NIXON twice quickly ordered plaintiff to come to the door and submit to hand restraints.  Before plaintiff complied with that order[3], however, defendant SIMMS opened the food slot and defendant NIXON administered a spray of the chemical agent.  Thus, within approximately ten seconds of defendants' entrance onto the run, plaintiff's cell was sprayed with a chemical agent.

---

[3]Defendant SIMMS' and defendant NIXON's explanation of their respective actions in not giving plaintiff time to comply, was because they saw him move toward the toilet instead of toward the cell door and thought that he was trying to flush some pills or contraband.

Plaintiff was then given an opportunity to comply.  An order for plaintiff to come to the door and submit to hand restraints was repeated several times during the next two minutes and plaintiff was warned of the consequences of a failure to obey.  Faced with plaintiff's continued noncompliance, defendant BORUNDA administered a second spray of chemical agent through the food slot into plaintiff's cell.  After another forty seconds, plaintiff began to comply with orders and, about three minutes later, he exited the cell on his knees.

After exiting the cell, plaintiff coughed and spat to his left; he then coughed a second cough.  When ordered to stand, plaintiff did so, coughing a third time.  Plaintiff took a couple of steps and then got on his knees.  The video shows that plaintiff was breathing through his nose, not through his mouth.  Plaintiff's breathing did not appear labored, and he gave no indication of troubled breathing of any sort.

Defendant BORUNDA called for a gurney, plaintiff was placed on the gurney, turned on his side, and transported to medical.  At medical, plaintiff was repeatedly asked whether he had any injuries due to the use of force.  Plaintiff did not reply.  Again, plaintiff was breathing through his nose and there appeared to be no labored breathing.  A nurse also visually examined plaintiff and found no injury.  Assistance was requested for operation of the digital camera, apparently because of the coughing of defendant BECERRA, who had begun coughing soon after plaintiff's cell door was opened.  Plaintiff was then transported down the hall, placed in front of a fan, and instructed the effects of the chemical agent would last approximately 45 minutes.  He remained in front of the fan for about 5 minutes and was then taken to a holding cell where he failed to respond to orders to stand up.  Plaintiff was removed from the gurney and set on the floor.  He was again given several orders to stand up, but he did not respond.  Plaintiff was then

lifted and placed inside the cell and officers secured his legs while the leg restraints were removed.  The cell door was closed and plaintiff was repeatedly ordered to place his hands through the slot to surrender his hand restraints.  When plaintiff refused to do so, defendant BORUNDA ordered a shield to be sent cellside.  Plaintiff then got up, appeared at the cell door, and agreed to give up the hand restraints.  Plaintiff was provided a damp towel to use and was also given a form on which to write his statement concerning the use of force.  Another strip search was conducted, and the video camera was turned off.

The video camera was later turned back on and plaintiff was given a second post-use of force physical examination.  The nurse appeared cellside and asked plaintiff repeatedly whether he had any injuries resulting from the use of force.  Plaintiff is plainly visible inside the cell, ignoring all inquiries; and the nurse noted she saw no injuries.  Plaintiff appears calm, is breathing through his nose, and there is no coughing or indication of breathing difficulties. Photographs were taken of plaintiff through the cell door and the camera was turned off again, terminating the incident.

Examination of the record evidence shows defendants NIXON and BORUNDA were disciplined in connection with the use of force on plaintiff.  [Exhibit D-1 at 14 and Exhibit D-3 at 66].  Defendant NIXON was disciplined for not giving plaintiff sufficient time to respond to his order and for failing to warn plaintiff of the consequences of a failure to comply.  Defendant BORUNDA was disciplined for failure to give direction as required in the use of force plan in a contained situation, that is, for failing to give defendant NIXON proper instructions while in the housing area and for not following the use of force policy requiring supervisors to direct all contained use of force situations.  These were all matters which involved whether TDCJ

regulations were followed. The TDCJ internal review of these issues did not concern any federal constitutional issues.

Consequently, the fact defendants BORUNDA and NIXON were admonished for failure to fully comply with TDCJ procedures during the use of force does not establish a constitutional violation. TDCJ policies do not define the scope of the protection offered by the Eighth Amendment and in fact generally exceed the floor established by the Constitution, to the benefit of the prisoner. The federal courts do not sit to enforce TDCJ policies and procedures. Plaintiff's rights are rooted in the federal Constitution, not in state law or procedure. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.), *cert. denied*, 489 U.S. 1085, 109 S.Ct. 1545, 103 L.Ed.2d 849 (1989); *Baker v. McCollan*, 433 U.S. 137, 146-47, 99 S.Ct. 2689, 2695-2696, 61 L.Ed.2d 433 (1979). To the extent plaintiff's claim against the defendants is based on any failure to satisfy TDCJ procedures, that claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In considering defendants' motion for summary judgment the Court must determine if the Eighth Amendment was violated, that is, whether force was utilized sadistically and maliciously for the very purpose of causing plaintiff harm or whether it was utilized in a good-faith effort to maintain or restore discipline or order. *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

To determine whether the use of force could plausibly have been thought necessary or whether it instead evinced a wanton infliction of pain, the Court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, and any efforts made to temper the severity of the response by prison officials.  The absence of a serious injury is relevant to this inquiry, but does not constitute the entirety of the analysis.  *Id*. 503 U.S. at 7, 112 S.Ct. at 999.

**Defendant CLARK**

The record evidence shows that, based upon an I-60 from a prison inmate to a Warden stating plaintiff had possession of contraband drugs, defendant Major BRIAN CLARK ordered a team be assembled to search plaintiff's cell and authorized the use of chemical force if plaintiff refused to comply with the search. [Exhibit D-3 at 65-66].  Following that order, Sgt. BORUNDA assembled a team consisting of Officer NIXON, Officer SIMMS, and Officer BECERRA. [Exhibit D-3 at 66].  Defendant CLARK was not present during the use of force and avers he did not order the use of excessive force. [Exhibit D-3 at 66].  This evidence is uncontradicted.

Section 1983 does not create supervisory or *respondeat superior* liability.  *Alton v. Tex. A & M Univ.,* 168 F.3d 196, 200 (5th Cir.1999)( "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.");  *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").  Individual officials may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Grandstaff v. City of Borger,* 767 F.2d 161, 169, 170 (5th Cir.1985).  Plaintiff has presented no allegation, much less

any evidence, of personal involvement by defendant CLARK or of any specific policies he implemented, nor has plaintiff shown how CLARK permitted or encouraged the alleged use of excessive force.

**Defendants SIMMS, NIXON, and BORUNDA**

Defendants' Exhibit D-1 at 37 contains the Employee Statement by defendant SIMMS concerning the challenged use of force.  Defendant SIMMS states that, when they arrived at plaintiff's cell, plaintiff was ordered to submit to hand restraints.  Instead of submitting, plaintiff approached his toilet and that was when SIMMS opened the food slot to allow NIXON to administer the chemical agent.

In his Offense Report [Exhibit D-1 at 55], written in connection with plaintiff's disciplinary charge for possession of unauthorized drugs and for failure or refusal to obey orders, defendant SIMMS recounted that, when ordered to submit to hand restraints for a cell search, plaintiff picked up some green and white pills and rushed to the toilet.  He flushed several of them, but SIMMS was able to find one of them on the floor.  They were later identified on the Offense Report [Defendants' Exhibit D-1 at 55] as "Nortriptine."

Defendants' Exhibit D-1 at 40 contains the Employee Statement by defendant NIXON concerning the challenged use of force.  Defendant NIXON says that when he ordered plaintiff to submit to hand restraints, plaintiff moved towards the toilet.  He said he again ordered plaintiff to submit to hand restraints, but did not give verbal warnings due to plaintiff's attempting to dispose of contraband.  He states defendant SIMMS opened the food slot and that he (NIXON) administered a burst of the chemical spray.  He says his gas mask then failed and he stepped back

to clear it.  After that point, defendant NIXON had no further involvement in the use of force or subsequent events. [Exhibit D-1 at 40].

Officer Guerrero's statement at Exhibit D-1 at 32-33 shows defendant Guerrero helped escort plaintiff from his cell to the infirmary and then to the holding cell, lifting plaintiff on and off of the gurney as necessary.

By his sworn Affidavit [Exhibit D-4 at 68-70], defendant ORTEGA avers he was not present and had no involvement in the issuance of orders to search plaintiff's cell, the formation of a use of force team, or the two applications of chemical use of force.  [Exhibit D-4 at 70]. ORTEGA states he arrived in response to BORUNDA's request for a gurney, at which time plaintiff was already outside his cell and in restraints.  Defendant ORTEGA states he merely observed, ready to assist if necessary, until plaintiff was placed on the gurney, at which time he went back to his previous duties.  [Exhibit D-4 at 70].  Later that date, ORTEGA witnessed defendant WHEELER pick up plaintiff's Offender Participant Statement and an Offender Group Refusal form.  [Exhibit D-4 at 70].

Defendant BORUNDA's affidavit supports that of defendant ORTEGA, saying CLARK, ORTEGA, and WHEELER were not present during the application of chemical agents. BORUNDA states GUERRERO and ANDERSON assisted himself and SIMMS in rolling plaintiff's gurney to the infirmary and to the holding cell [Exhibit D-2 at 61-62].  As to the application of chemical force by defendant NIXON, defendant BORUNDA says he was not close enough to prevent it but opines it was reasonable in light of NIXON's viewing of plaintiff's attempt to dispose of the contraband pills.

In addition, defendant CLARK opines that NIXON's quick use of chemical force was reasonable and appropriate in view of plaintiff's attempt to flush contraband drugs and BORUNDA's later application of chemical force was a reasonable and appropriate response to plaintiff's failure to comply with orders to submit to hand restraints and exit his cell for a cell search. [Exhibit D-3 at 66].

Defendant ANDERSON's statement at Exhibit D-1 at 35 shows he arrived with the gurney and assisted in lifting plaintiff onto and off of the gurney, as necessary, and wheeling him to the infirmary and, later, to the holding cell. It appears plaintiff may have confused defendant ANDERSON's name with that of defendant WHEELER.

Defendants' Exhibit D-1 at 25 shows defendant Lt. Jowers investigated the Use of Force and completed a Supervisor's Summary [Exhibit D-1 at 24-27].

Defendants' Exhibit D-5 at 72-74 shows defendant WHEELER was not present during the use of force and only helped compile the use of force report by picking up plaintiff's Offender Participant Statement, which plaintiff did not fill out, and compiling a list of inmates who refused to give witness statements, *e.g.*, an Offender Group refusal form.

On May 18, 2010, plaintiff was found guilty of a disciplinary charge of possessing unauthorized drugs and of failing to obey an order to submit to hand restraints. [Exhibit D-2 at 62].

Defendants' uncontroverted evidence, detailed above, shows the chemical force administered was not deployed sadistically and maliciously for the very purpose of causing plaintiff harm either by defendant NIXON or by defendant BORUNDA. Instead, the evidence of record shows chemical force was utilized the first time, by defendant NIXON, in a good-faith

effort to maintain or restore discipline by attempting to prevent plaintiff from disposing of contraband pills he was attempting to flush down the toilet.  The evidence of record further shows that the second time chemical agents were used, by defendant BORUNDA, such were used in a good faith effort to obtain plaintiff's compliance with lawful orders to submit to hand restraints for a search of his cell.  These uses of chemical force were not objectively unreasonable and plaintiff has failed to defeat the entitlement of defendants NIXON, SIMMS, and BORUNDA to the defense of qualified immunity.  Moreover, the evidence of record shows plaintiff was not injured by the chemical uses of force and that the use of such force was *de minimus*.

**Defendants WHEELER and ORTEGA**

Lastly, defendants's unrebutted evidence shows defendant ORTEGA did not participate in either use of chemical force and was not present until after it had been used.  Further, defendant WHEELER was not present during any part of the challenged use of force.  Therefore, neither defendant WHEELER nor defendant ORTEGA could have prevented the challenged use of force and they are entitled to qualified immunity.

**Defendants NIXON AND SIMMS – RULE 4(m), FEDERAL RULES OF CIVIL PROCEDURE**

After the Court's September 4, 2012 Order to Answer resulted in a notice from the Attorney General's Office that it could not reach defendants NIXON and SIMMS to secure consent for representation, the Court, in compliance with Rule 4(c)(3), Federal Rules of Civil Procedure, issued an October 23, 2012 Order Directing Issuance of Process and Service upon NIXON and SIMMS at their last known addresses.  On April 8, 2013, process for both defendants was returned unserved, and a docket entry was made by the Clerk noting that event.  On May 20,

2013, the Court issued an Order to Show Cause Why Defendants Nixon and Simms should not be Dismissed.  Plaintiff responded on May 31, 2013 stating he was proceeding in forma pauperis and had no further information about defendants NIXON and SIMMS' whereabouts.  Plaintiff then filed a June 18, 2013 Motion for an Order to issue process and serve NIXON and SIMMS.  That motion was denied by Order issued June 21, 2013 because the prior attempts to serve were unsuccessful and the Court had received no additional information from plaintiff or anyone else as to the location of these two defendants.

The Federal Rules of Civil Procedure provide:

> If a defendant is not served within 120 days after the complaint is
> filed, the court – on motion or on its own after notice to the
> plaintiff – must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time.
> But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Rule 4(m), FED.R.CIV.PRO.  By May 20, 2013, plaintiff plainly had actual notice that the Marshal had been unable to serve defendants NIXON and SIMMS.  More than 120 days have passed since issuance of the Show Cause Order.

Plaintiff states in his May 31, 2013 Show Cause Response that he has no information to supply the U.S. Marshal.  Nevertheless, by his June 18, 2013 motion plaintiff requests the Court to order the U.S. Marshal to attempt service upon the two remaining defendants.

Although "a litigant proceeding *in forma pauperis* is entitled to rely upon service by the U.S. Marshal," he must remedy any service defect of which he has notice.  *Rochon v. Dawson*, 828 F.2d 1107, 1109-10 (5th Cir. 1987).  "A litigant's *pro se* status neither excuses his failure to effect service nor excuses him for lack of knowledge of the Rules of Civil Procedure."  *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013).

Plaintiff makes it clear that he has no further information and does not expect to discover any further information to assist the U.S. Marshal in locating and effecting service upon defendants NIXON and SIMMS.

Therefore, should defendants NIXON and SIMMS not be entitled to "benefit from the appearing defendants' favorable summary judgment motion," *Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir.2001); *see also Bloch v. Samuels,* No. H-04-4861, 2006 WL 2239016, *9 (S.D.Tex. Aug.6, 2006), then plaintiff's claims against these defendants should be dismissed without prejudice pursuant to Rule 4, Federal Rules of Civil Procedure, for failure to perfect service or provide sufficient information to enable the U.S. Marshal to effect service.

## CONCLUSION

For the reasons set forth above,  it is clear that, drawing all reasonable inferences in favor of plaintiff, there is no material issue of disputed fact which precludes entry of summary judgment for the defendants on the issue of qualified immunity.  Federal Rule of Civil Procedure 56(a).

Pursuant to 28 U.S.C. § 1915A(2), § 1915(e)(2), it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that defendants' Motions for Summary Judgment be GRANTED; and that all remaining claims by plaintiff LESLIE LLOYD MOSS be DISMISSED WITH PREJUDICE.

In the alternative, and only as to plaintiff's claims against defendants NIXON and SIMMS, should these defendants not be entitled to "benefit from the appearing defendants' favorable summary judgment motion," *Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir.2001); *see also Bloch v. Samuels,* No. H-04-4861, 2006 WL 2239016, *9 (S.D.Tex. Aug.6, 2006), then it is the

further RECOMMENDATION of the Magistrate Judge to the United States District Judge that plaintiff's claims against defendants NIXON and SIMMS be dismissed without prejudice pursuant to Rule 4, Federal Rules of Civil Procedure, for failure to perfect service or provide sufficient information to enable the U.S. Marshal to effect service.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

**IT IS SO RECOMMENDED.**

ENTERED this 13th day of February, 2014.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

4\10.259.exforce